**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LEMONT LOVE, | : | |
| Petitioner, | : | Civ. No. 20-1520 (GC) |
| v. | : | |
| ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, | : | **OPINION** |
| Respondent. | : | |

**CASTNER, District Judge**

### I.     INTRODUCTION

Petitioner, Lemont Love ("Petitioner" or "Love"), is proceeding *pro se* with an amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (*See* ECF 3).  For the following reasons, Petitioner's amended habeas petition is denied and a certificate of appealability shall not issue.

### II.     FACTUAL AND PROCEDURAL BACKGROUND

The factual background giving rise to Petitioner's state criminal convictions at issue in this case is taken from the New Jersey Superior Court, Appellate Division's decision which affirmed the denial of Petitioners post-conviction relief ("PCR") petition.  That court stated as follows:

> Darin Sloat owed defendant a significant amount of money. On the morning of February 17, 2010, Sloat was staying at a motel in East Brunswick with his girlfriend, K.E., and her ten-month-old son, when defendant and two co-defendants entered the room and attacked Sloat. Defendant stomped and kicked Sloat, co-defendant Randy Williams punched Sloat in the head and neck, and co-defendant Charles Opher punched Sloat in the lower back.

> Following the assault, defendant, Williams, and Opher ran out of the motel room, taking Sloat's cell phone with them, and fleeing in a silver Pontiac. After an alert went out for their vehicle, the police apprehended the trio in Spotswood. The police recovered Sloat's cell phone from the vehicle, and testing confirmed the presence of blood on defendant's sneakers. The police transported defendant, Williams, and Opher to the police station, where East Brunswick police also brought Sloat to see if he could identify the persons who assaulted him. As defendant, Williams, and Opher stepped out of the police vehicle, one by one, Sloat identified each one as participating in the assault. Sloat then gave a statement to the police. Sloat testified to these events at trial.
>
> A Middlesex County grand jury indicted defendant, Williams, and Opher on charges of robbery, burglary, and aggravated assault. Opher resolved his charges through a plea agreement, which called for him to testify against defendant and Williams. At trial, Opher testified that he, defendant, and Williams each hit or stomped Sloat. K.E. also testified that she saw all three defendants "kicking [Sloat] and punching him in the head and the back."

*State v. Love*, No. A-5367-16T4, 2019 WL 1111138, at *1 (N.J. Super. Ct. App. Div. Mar. 11, 2019).

> In 2011, a jury found defendant and his co-defendant, Randy Williams, guilty of second-degree robbery, N.J.S.A. 2C:15-1; second-degree burglary, N.J.S.A. 2C:18-2; and third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1). The trial judge sentenced defendant to an aggregate term of twelve years of imprisonment with an eighty-five percent period of parole ineligibility, pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. The judge also ordered defendant to serve a five-year term of parole supervision, after completing his prison term.

*Love*, 2019 WL 1111138, at *1.

The New Jersey Superior Court, Appellate Division affirmed Petitioner's judgment of conviction on direct appeal but remanded for the entry of an amended judgment of conviction which would merge Petitioner's aggravated assault conviction with his robbery conviction. *See State v. Love*, A-1321-11T1, A-5409-10T1, 2014 WL 3743664 (N.J. Sup. Ct. App. Div. July 31, 2014). An amended judgment of conviction merging these two convictions was then entered. (*See*

ECF 8-8). The New Jersey Supreme Court ultimately denied Petitioner's petition for certification without comment on direct appeal. *See State v. Love*, 105 A.3d 1102 (N.J. 2015).

Petitioner next filed a PCR petition along with a *pro se* supplemental brief in support of his PCR petition. (*See* ECF 8-10, 8-11). Petitioner then filed a second *pro se* supplement in support of his PCR petition. (*See* ECF 8-15). The New Jersey Superior Court, Law Division, denied Petitioner's PCR petition in a written opinion. (*See* ECF 8-19). The New Jersey Superior Court, Appellate Division affirmed that denial on appeal. *See Love*, 2019 WL 1111138. The New Jersey Supreme Court denied Petitioner's petition for certification on his PCR petition without discussion. *See State v. Love*, 217 A.3d 743 (N.J. 2019).

Petitioner then initiated this federal habeas action. (*See* ECF 1). Petitioner subsequently filed an amended habeas petition. (*See* ECF 3). Petitioner's amended habeas petition raises a plethora of claims; they are as follows:

1. Juror's contact with Petitioner outside of the courtroom while he was in handcuffs deprived him of a fair trial ("Claim I");

2. Prosecutor's closing argument that theft component of robbery charge was related to attempt to collect money that Sloat owed to Petitioner was a theory of the case never presented to the grand jury such that Petitioner's robbery conviction must be vacated ("Claim II");

3. Court's response to jury question that they can consider theft of Sloat's cell phone as lesser-included charge under robbery deprived Petitioner of a fair trial ("Claim III");

4. State failed to present sufficient facts to sustain the robbery conviction ("Claim IV");

5. Petitioner was deprived of a fair trial due to material variance between prosecutor's grand jury representation that first-degree robbery was based on taking of Sloat's cell phone and

3

trial prosecutor's representation that first-degree robbery was based on money that Petitioner thought Sloat owed him ("Claim V");

6. Jury charge was defective because instructions were misleading and contrary to the robbery charge ("Claim VI");

7. Petitioner was denied a fair trial because of material variance between grand jury prosecutor representation that second-degree burglary was for purpose of robbing Sloat's cell phone and the trial prosecutor's representation that it was based on money that Petitioner thought Sloat owed him ("Claim VII");

8. Ineffective assistance of trial counsel for failing to move to suppress Sloat's cell phone ("Claim VIII");

9. Petitioner's motion for judgment of acquittal and a new trial should have been granted ("Claim IX");

10. The cumulative effect of the errors in Claims I-V rendered Petitioner's trial unfair ("Claim X");

11. Petitioner's sentence is illegal because the trial court failed to consider whether to impose the discretionary extended term pursuant to N.J. Stat. Ann. § 2C:44-3 ("Claim XI");

12. Trial counsel failed to raise the issue of selective prosecution ("Claim XII");

13. Trial counsel failed to request an attempt charge to the jury with regard to the robbery count and appellate counsel failed to raise it on appeal ("Claim XIII");

14. Defense counsel failed to assure that Petitioner was confronted by all witnesses relevant to his prosecution ("Claim XIVa"[1]);

15. Counsel failed to present an adequate defense ("Claim XIVb");

---

[1] Petitioner has two claims in his amended habeas petition numbered 14. This Court will do the same for consistency purposes.

16. Petitioner's sentence was not in accord with the No Early Release Act ("NERA") ("Claim XV");

17. Petitioner's conviction should be reversed because trial judge previously prosecuted Petitioner ("Claim XVI");

18. Sloat committed perjury at Petitioner's trial ("Claim XVIIa");

19. Ineffective assistance of trial counsel for failing to investigate perjured testimony ("Claim XVIIb");

20. Trial counsel failed to present exculpatory evidence ("Claim XVIII");

21. Ineffective assistance of appellate counsel ("Claim XIX");

22. Ineffective assistance of PCR counsel ("Claim XX");

23. Petitioner's conviction must be reversed due to perjured testimony ("Claim XXI");

24. The certification of Petitioner ("Claim XXII");

25. Petitioner is at least entitled to an evidentiary hearing on several ineffective assistance of counsel claims ("Claim XXIII");

26. PCR counsel was ineffective because PCR counsel did not advance all arguments requested by Petitioner ("Claim XXIV");

27. Ineffective assistance of trial and appellate counsel ("Claim XXV");

28. The trial judge should have recused himself because he had previously prosecuted Petitioner when he was a county prosecutor ("Claim XXVI");

29. Petitioner is entitled to an evidentiary hearing ("Claim XXVII");

30. Imposing a five-year period of parole supervision for a conviction of a second-degree crime is illegal ("Claim XXVIII");

31. Ineffective assistance of trial and appellate counsel ("Claim XXIX");

32. State's presentation of a false case to the jury violated Petitioner's right to a fair trial ("Claim XXXa"); and

33. Ineffective assistance of counsel ("Claim XXXb").

Respondent filed a response and numerous exhibits in opposing Petitioner's amended habeas petition. (*See* ECF 7, 8, 9 & 10). Petitioner did not file a reply brief in support of his amended habeas petition. The matter can now be adjudicated.

## III.   LEGAL STANDARD

An application for writ of habeas corpus by a person in custody under judgment of a state court can only be granted for violations of the Constitution or laws or treaties of the United States. *See Engle v. Isaac*, 456 U.S. 107, 119 (1982); *see also Mason v. Myers*, 208 F.3d 414, 415 n.1 (3d Cir. 2000) (citing 28 U.S.C. § 2254). Petitioner filed this petition for writ of habeas corpus after April 24, 1996, thus, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104-132, 110 Stat. 1214 (Apr. 24, 1996), applies. *See Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Under AEDPA, federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court. *See* 28 U.S.C. § 2254(d).

As a threshold matter, a court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting 28 U.S.C. § 2254(d)(1)). "'[C]learly established federal law' under § 2254(d)(1) is the governing legal principle set forth by the Supreme Court at the time the state

court renders its decision." *Id.* (citations omitted). A federal habeas court making an unreasonable application inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *See Williams v. Taylor*, 529 U.S. 362, 409 (2000). Thus, "a federal court may not issue a writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. Furthermore, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e); *see also Rice v. Collins*, 546 U.S. 333, 339 (2006) (petitioner bears the burden of rebutting presumption by clear and convincing evidence); *Duncan v. Morton*, 256 F.3d 189, 196 (3d Cir. 2001) (factual determinations of state trial and appellate courts are presumed to be correct).

The AEDPA standard under § 2254(d) is a "difficult" test to meet and is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). A petitioner carries the burden of proof and with respect to review under § 2254(d)(1), that review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, 563 U.S. at 181.

In applying AEDPA's standards, the relevant state court decision that is appropriate for federal habeas corpus review is the last reasoned state court decision. *See Bond v. Beard*, 539 F.3d 256, 289-90 (3d Cir. 2008). Furthermore, "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *see also Wilson*

*v. Sellers*, 138 S. Ct. 1188, 1192 (2018); *Rambo v. Adm'r East Jersey State Prison*, 762 F. App'x 105, 107 (3d Cir. 2019) (noting the applicability of *Ylst*'s "look through" doctrine).

AEDPA's deferential standards apply "even where there has been a summary denial" by the state court. *See Cullen*, 563 U.S at 187.

## IV.    DISCUSSION

A.  <u>Claim I – Jurors witnessing Petitioner in handcuffs outside of the courtroom</u>

In Claim I, Petitioner asserts that he was denied a fair trial when jurors viewed him outside of the courtroom in handcuffs.  The last reasoned state court decision on this claim was from the New Jersey Superior Court, Appellate Division, during Petitioner's direct appeal which analyzed and denied this claim as follows:

> During deliberations, the jury took a recess and as they were about to exit an elevator to return to the courtroom, they saw defendants in handcuffs returning to the courtroom.  The court was informed of the incident and questioned each juror individually to determine what, if anything, they saw.

> Some jurors reported that after the doors opened, the elevator doors closed and they went down a second time.  There was talk that the doors closed and they went down in the elevator again because defendants were walking in the hallway.   Juror eleven stated that she saw defendants handcuffed, but that she could still perform her duties impartially.  The jury then reassembled in the courtroom and each juror individually responded that he or she could continue to be fair and impartial in the deliberations. . . .

> Love urges that once the jury learned he was in custody, such knowledge influenced their deliberations and verdict. . . .

> The Sixth Amendment to the United States Constitution and Article I, paragraph 10 of the New Jersey Constitution guarantee criminal defendants the right to trial by an impartial jury. *State v. R.D.,* 169 *N.J.* 551, 557 (2001).  Thus, a criminal defendant "is entitled to a jury that is free of outside influences and [who] will decide the case according to the evidence and arguments presented in court in the course of the criminal trial itself." *State v. Williams,* 93 *N.J.* 39, 60 (1983).  "[I]f during the course of the trial it becomes apparent that

a juror may have been exposed to extraneous information, the trial court must act swiftly to overcome any potential bias and to expose factors impinging on the juror's impartiality." *R.D., supra,* 169 *N.J.* at 557–58.  When a juror may have been exposed to an outside influence,

> the trial judge must make a probing inquiry into the possible prejudice caused by any jury irregularity, relying on his or her own objective evaluation of the potential for prejudice rather than on the jurors' subjective evaluation of their own impartiality. Although the trial judge has discretion in the way to investigate allegations of jury misconduct, an adequate inquiry on the record is necessary for the purposes of appellate review.
>
> [*State v. Scherzer,* 301 *N.J. Super.* 363, 488 (App. Div.) (citations omitted), *certif. denied,* 151 *N.J.* 466 (1997).]

As part of the inquiry, the trial "court is obliged to interrogate the juror, in the presence of counsel, to determine if there is a taint; if so, the inquiry must expand to determine whether any other jurors have been tainted thereby." *R.D., supra,* 169 *N.J.* at 558.  Pressler & Verniero, *Current N.J. Court Rules,* comment 2.1 on *Rule* 1:16–1 (2013) states:

> Although the rule is drawn in terms of a post-verdict interrogation of jurors, the technique provided by the rule for determining juror taint is obviously applicable during the course of the trial as well when a circumstance arises suggesting that a juror may in fact be tainted.  In that situation the trial court, upon being apprised of such a circumstance, is obliged to interrogate the juror in the presence of counsel to determine if there is a taint.  If so, the court is then obliged to interview the other jurors to determine if they or any of them have been infected by the taint. The court is then obliged to determine, assuming a sufficient number of jurors remain, whether the trial may proceed upon excusing the tainted juror or jurors or whether a mistrial must be declared.
>
> [ (citations omitted).]

Such improper influence may include, as here, instances where jurors view a defendant dressed in restraints. *Estelle v. Williams,* 425 *U.S.* 501, 512–13, 96 *S. Ct.* 1691, 1697, 48 *L. Ed. 2d* 126, 135 (1976); *State v. Kuchera,* 198 *N.J.* 482, 496–97 (2009); *State v. Damon,* 286 *N.J. Super.* 492, 497–98 (App. Div.1996). "'Not only is it possible that the sight of [handcuffs] might have a significant effect on the jury's feelings about the defendant, but the use of this technique is itself something of an affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold.'" *Damon, supra,* 286 *N.J. Super.* at 498 (quoting *Illinois v. Allen,* 397 *U.S.* 337, 344, 90 *S. Ct.* 1057, 1061, 25 *L. Ed. 2d* 353, 359 (1970)).

In the circumstances presented here, the judge acted appropriately. After learning the jurors may have seen defendants in custody, he questioned each juror individually. Through this process, he learned that only one juror saw defendant in handcuffs, some jurors saw the head of the defendant, and some jurors saw nothing. Following this individual and particularized questioning of each juror, the judge brought all of the jurors back together and asked each juror individually whether he or she could continue to be a fair and impartial juror. Each responded affirmatively. The judge thus evaluated the potential prejudice objectively, through his opportunity to observe the jurors' responses and by subjective evaluation of their own impartiality. *Scherzer, supra,* 301 *N.J. Super.* at 487–88.

"A mistrial is an extraordinary remedy[ ]" that should be employed "[o]nly when there has been an obvious failure of justice[ .]" *State v. Mance,* 300 *N.J. Super.* 37, 57 (App. Div.1997). When "the court has an appropriate alternative course of action[,]" it should deny a request for a mistrial. *State v. Allah,* 170 *N.J.* 269, 281 (2002). This determination is highly fact sensitive. *Id.* at 280.

In our review of the grant or denial of a mistrial motion, we "should defer to the decision of the trial court, which is in the best position to gauge the effect of the allegedly prejudicial evidence." *State v. Harvey,* 151 *N.J.* 117, 205 (1997). Thus, we will not disturb a trial court's ruling on the motion unless we conclude the judge's ruling represents an abuse of discretion resulting in a "manifest injustice." *State v. DiRienzo,* 53 *N.J.* 360, 383 (1969); *see also Allah, supra,* 170 *N.J.* at 269.

Here, the trial judge's credibility determinations following his voir dire of each juror should be accorded substantial deference. He acted well within his discretion in determining the jury was not

> tainted and in denying the motions for mistrial. *R.D., supra,* 169
> *N.J.* at 559. We find no manifest injustice in this ruling or in the
> failure to provide any further curative instructions following the voir
> dire, individually of each jury, to warrant our interference.

*Love* 2014 WL 3743664, at \*1–2, 2, 3-5.

The Due Process Clause of the United States Constitution prohibits routine use of physical restraints visible to the jury during a criminal trial. *See Deck v. Missouri,* 544 U.S. 622, 624, 626 (2005). Numerous courts, though, have distinguished the situation in which a shackled criminal defendant is briefly observed by jurors while being transported, generally finding such encounters harmless. *See, e.g., United States v. Jackson,* 423 F. App'x 329, 331 (4th Cir. 2011) (citing *United States v. Lattner,* 385 F.3d 947, 959-60 (6th Cir. 2004); *United States v. Halliburton,* 80 F.2d 557, 560-61 (9th Cir. 1989)); *see also Pantusco v. Lagana,* No. 11–680, 2013 WL 4446965, at \*6 (D.N.J. Aug.16, 2013) (citations omitted). Additionally, the United States Court of Appeals for the Third Circuit has "long held that a brief, unintended glimpse of a defendant in handcuffs is not inherently prejudicial and does not require a mistrial without an affirmative showing of actual prejudice." *United States v. Roane,* 338 F. App'x 127, 130 (3d Cir. 2009) (citing *United States v. Chrzanowski,* 502 F.2d 573, 576 (3d Cir. 1974); *United States v. Simpson,* 950 F.2d 1419, 1522 (10th Cir. 1991)).

There is no suggestion that Petitioner was shackled or handcuffed during the entire trial. Instead, what this record reveals is that Petitioner was seen in handcuffs once by one juror outside the courtroom during transport. There is no evidence to suggest though that Petitioner suffered any harm or prejudice because one juror saw one of the defendants in handcuffs outside the courtroom. The record indicates that this one juror, upon being voir dired by the trial judge, understood the "process" and could remain impartial. (*See* ECF 7-8 at 38-39). Therefore, this Court finds that Petitioner is not entitled to habeas relief on Claim I.

B. <u>Claim II – Prosecutor's argument during closing that the robbery was based on money, not the cell phone was never presented to the grand jury</u>

In Claim II, Petitioner argues that his robbery conviction must be vacated because the prosecutor during closing arguments asserted the robbery was based on the theft or attempted theft of money, not Sloat's cell phone as had been the argument by the prosecution to the grand jury. The last reasoned decision on this claim was from the New Jersey Superior Court, Appellate Division during Petitioner's direct appeal which discussed and analyzed this claim as follows:

> Defendants next contend their convictions must be reversed because they were convicted of a criminal offense for which they were not indicted. Specifically, they point to the grand jury proceeding where the State presented its theory of robbery to the jury based upon defendants' purported theft of Sloat's cell phone. They note a grand juror initially inquired of the prosecutor whether the robbery charge presented pertained to the stolen phone, to which the assistant prosecutor responded affirmatively.

> "No person shall be held to answer for a criminal offense, unless on the presentment or indictment of a grand jury. . . ." *N.J. Const.* Art. I, ¶ 8. It is fundamental that an indictment charging a defendant with the commission of a crime must identify and explain the criminal offense so that the accused may prepare an adequate defense. *State v. LeFurge,* 101 *N.J.* 404, 415 (1986). If the criminal transaction for which a defendant is convicted differs from what was charged by the State in the indictment, the defendant may not be convicted thereon. *State v. Wolden,* 153 *N.J. Super.* 57, 60 (1970). Nonetheless, "[a]n indictment is merely a pleading device and never an end in itself." *State v. Lopez,* 276 *N.J. Super.* 296, 303 (App. Div.) (quoting *LeFurge, supra,* 101 *N.J.* at 419, *certif. denied,* 139 *N.J.* 289 (1994). While an indictment must be specific enough to notify the jury and the trial court of the charge before it, the interpretation of the charge "cannot be permitted to deteriorate into a mere game . . . on the basis of some arcane notion of pleading." *Ibid.* (alteration in original) (citations and internal quotation marks omitted).

> Thus, "courts have refused to construe the language of an indictment rigidly in the absence of any indication that a case was presented to a trial jury on a different basis than to the grand jury or a showing of other prejudice to the defendant." *Ibid.*

In *State v. Talley,* 94 *N.J.* 385, 394 (1983), the indictment accused defendant of robbery.

> Defendant was thereby informed that he was alleged to have committed a theft on that date, and the mere fact that the theft was accomplished by deception rather than by force hardly can be said to render the indictment insufficient to encompass defendant's conduct or to make it constitutionally defective.

> [Ibid.]

Similarly, in *State v. Dixon,* 125 *N.J.* 223, 257–58 (1991), the Court concluded that the trial court did not commit reversible error in submitting a charge of aggravated criminal sexual contact based on the presence of a deadly weapon even though the indictment charged only the commission of aggravated criminal sexual contact based on the commission of a robbery.

Defendants were indicted for first-degree robbery as follows:

> The Grand Jurors of the State of New Jersey, for the County of Middlesex, upon their oaths, present that **LAMONT LOVE, RANDY WILLIAMS, and CHARLES OPHER,** on or about the 17th day of February, 2010, in the Township of East Brunswick, in the County of Middlesex, aforesaid, and within the jurisdiction of this Court, in the course of committing a theft, did attempt to cause serious bodily injury upon Darren Sloat; contrary to the provisions of *N.J.S.A.* 2C:15–1 and *N.J.S.A.* 2C:2–6, and against the peace of this State, the Government, and dignity of the same.

Thus, defendants were not charged with any crime for which they were not indicted. Moreover, during the grand jury proceedings, the assistant prosecutor presented the factual theory upon which the State expected to proceed, namely that defendants went to the motel looking for Sloat, who owed Love a substantial amount of money. In the State's opening statement at trial, the assistant prosecutor, without objection, reiterated that defendants' motive for going to the motel was to assault and collect money allegedly owed to Love. In addition, during the trial, the State introduced testimony regarding Sloat's indebtedness to Love without objection. Finally, this theory underlying the commission of the crimes was argued by the State in its closing argument without objection.

*Love*, 2014 WL 3743664, at *5–6.

Petitioner fails to show that the state court's denial of this claim was contrary to, or an unreasonable application of clearly established federal law, nor has Petitioner shown that the denial of this claim was based on an unreasonable determination of the facts. The Sixth Amendment provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . .to be informed of the nature and cause of the accusation." U.S. Const. amend VI. Consequently, a prisoner has a right to adequate notice of the charges against which he must defend; and this general principle is well established in Supreme Court precedent. *See Gray v. Netherland,* 518 U.S. 152, 167 (1996); *Russell v. United States,* 369 U.S. 749, 763–764 (1962) *Cole v. Arkansas,* 333 U.S. 196, 201 (1948) ("No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal.").

Petitioner argues he was deprived of adequate notice by a prosecutorial decision to focus on a *different theory of liability* at trial than that which was presented to a grand jury to indict him. Initially, this Court notes that Petitioner has not pointed to a United States Supreme Court decision which establishes that the prosecution must present the same theory at trial as was presented to the grand jury for indictment. *See Lopez v. Smith,* 574 U.S. 1, 9 (2014) ("Absent a decision of ours clearly establishing the relevant standard, the Ninth Circuit had nothing against which it could assess, and deem lacking, the notice afforded respondent by the information and proceedings."); *Accord Still v. Hastings*, No. 13-6226, 2015 WL 3934937, at *5-9 (D.N.J. June 26, 2015).

In many ways, the arguments that Petitioner raises in this claim are like the ones rejected by this Court in *Still*. In *Still*, a § 2254 habeas petitioner argued that his due process rights were

violated when the theory presented to the grand jury was limited to the robbery of cab fare, yet, at trial, the theory that was presented to the jury was that marijuana was the object of the robbery. *See* 2015 WL 3934937, at *5. Like this case, the petitioner in *Still* failed to state any controlling United States Supreme Court precedent that the prosecution must present the same theory at trial as presented to the grand jury for indictment. *See id.* at *7. Furthermore, like *Still*, the Petitioner was clearly put on notice of the charges of robbery in the indictment. Additionally, the underlying factual circumstances of this case, like *Still*, were not complex. Similar to *Still*, the robbery charges in this case involved only two potential objects, the cell phone or money. The Court in *Still* ultimately denied Petitioner habeas relief on a relatively similar claim to the one Petitioner brings in this case within Claim II. Thus, the Court finds *Still*'s reasoning persuasive and will deny Claim II.

C. Claim III – Court's response to jury question considering theft of Sloat's cell phone as a lesser included charge under robbery deprived Petitioner of fair trial because it was confusing and contradictory

In Claim III, Petitioner claims that the trial judge improperly told the jury that they could consider the taking of Sloat's cell phone as a lesser included charge under robbery. According to Petitioner, the taking of Sloat's cell phone was an afterthought such that the trial judge erred in his instructions to the jury. The last reasoned decision on this claim was from the New Jersey Superior Court, Appellate Division on Petitioner's direct appeal which analyzed and denied this claim as follows:

> Next, during deliberations, the jury sent a question to the court: "Is the charge of theft for theft of the phone or the money Love felt he was owed?" The court responded that the robbery charge related to the cell phone. The assistant prosecutor sought clarification from the court because she had not read the note prior to the court responding to the jury's question. She expressed that the court's response essentially limited the jury's consideration to theft of the cell phone, which was Question 1C on the verdict sheet. She pointed

out that Questions 1A and 1B related to the robbery and the particular language, "in the course of committing a theft for the robbery [,] [on the verdict sheet] had to do with the money." In response to the assistant prosecutor's inquiry, defense counsel objected to any further clarification, urging that the grand jury transcript "refers to the cell phone." The assistant prosecutor objected to that characterization of the grand jury proceedings and read a portion of the transcript related to a statement given to police by Opher during which he stated that Sloat owed Love money and was looking for Sloat to get his money.

The court determined that clarification was needed and instructed the jury as follows:

> Last I want to go back to the note that brought you in five minutes ago because I may have erred. I may have read it too literally. . . .
>
> It says, "Is the charge of theft for theft of the phone or the money Love felt he was owed?"
>
> Don't respond to this. Just hear me out. When I said cell phone, one of the reasons I said that is because your note reads is the charge of theft. And if you read 1C, it says on the charge of theft, et cetera, et cetera. So on 1C for each defendant on the charge of theft, my answer stands, the cell phone.
>
> And by the way, what I say to you, I'm not advocating for either side. I assure you that. Nor do I imply anything.
>
> 1A and 1B my answer, although, is different. 1A and 1B deal with robbery. They read exactly the same except 1A reads serious bodily injury, 1B is bodily injury.
>
> And those charges read on the charge of robbery that the defendant in the course of committing a theft did attempt to cause serious bodily injury or 1B, did attempt to cause bodily injury. 1A and 1B, the answer to your question is money.
>
> So I may—and since I'm not a mind reader, I may have misread your letter or taken it—or taken it too literally. So when you consider 1A and 1B in which

the charges are in the course of committing a theft an attempt was made to cause serious bodily injury or bodily injury, that-those two robbery questions, A and B, the answer to the question is money.  But on the lesser included charge of theft, 1C, my answer stands, cell phone.

On review, our task is to "determine whether the trial court erred in its response and, if so, whether that 'error undermines our confidence that the deliberative process produced a just result and the conviction must be reversed.'" *State v. Lykes,* 192 *N.J.* 519, 537 (2007) (quoting *State v. Parsons,* 270 *N.J. Super.* 213, 224–25 (App. Div. 1994)).  Any supplemental instruction must be viewed in light of the main charge.  *See State v. Ramseur,* 106 *N.J.* 126, 305 (1987) (stating that a trial court should relate the supplemental instruction back to the main jury charge being supplemented).  Based upon our review of the trial judge's instruction to the jury on this issue, in its entirety, we conclude there was no error in the judge's response.

After the judge realized his initial instruction may have been confusing to the jury, the judge appropriately brought them back in to more fully explain the answer to his question.  The robbery charge was appropriate only for the attempted theft of the money based on the intent in the statute, as there is no evidence to show that defendants went there with the intention to steal the cell phone.  Rather, the phone was taken in the heat of the moment and attack.  The judge properly instructed the jury that they were not to deliberate on robbery based on theft of the phone, but only if they believed defendants went to the motel with the purpose and intent to collect the debt from Sloat.  "[B]ecause the trial court instructed the jury in accordance with relevant legal principles, under ordinary circumstances, we would presume that the jury understood and followed those instructions." [State v.] *Savage,* 172 *N.J.* [374,] 394 [(2002)] (citing *State v. Burris,* 145 *N.J.* 509 (1996); *see also State v. Manley,* 54 *N.J.* 259, 270 (1969) (stating that, with regard to proper use of evidence, "the Court presumes that juries will understand and abide by the court's instruction").  Thus, it must be presumed that the jury followed the instructions and did not consider the theft of the cell phone for the charge of robbery.

*Love,* 2014 WL 3743664, at *6–7.

To show that a jury instruction violated a person's due process rights, a petitioner must show "both that the instruction was ambiguous and that there was a reasonable likelihood that the

jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Waddington v. Sarausad*, 555 U.S. 179, 190-91 (2009) (internal citation and quotation marks omitted). The instruction "must be considered in the context of the instructions as a whole and the trial record." *Id.* at 191 (internal citation and quotation marks omitted). Moreover, "it is not enough that there is some slight possibility that the jury misapplied the instruction, the pertinent question is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* (internal citation and quotation marks omitted). "In other words, the inquiry requires careful consideration of each trial's unique facts, the narratives presented by the parties, the arguments counsel delivered to the jurors before they retired to deliberate, and the charge as a whole." *Williams v. Beard*, 637 F.3d 195, 223 (3d Cir. 2011) (citing *Waddington*, 555 U.S. 179).

This Court fails to see that this claim rises to a level to warrant granting Petitioner federal habeas relief. Indeed, the state court's denial of this claim was not contrary to, nor an unreasonable application of clearly established federal law as described above, nor was it based on an unreasonable determination of the facts. Accordingly, Claim III is denied.

D. Claim IV – Insufficiency of the evidence on the robbery conviction

In Claim IV, Petitioner argues that there was insufficient evidence to convict him of robbery because "the state didn't produce any evidence that the [P]etitioner asked for money, took money, searched the room for money, or produce any other evidence that [P]etitioner went to the victim's hotel room with the intent to take money. The New Jersey Superior Court, Appellate Division summarily denied this claim on Petitioner's direct appeal. *See Love*, 2014 WL 3743664, at *8.

The clearly established federal law on this claim is *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In *Jackson*, the Supreme Court held that when considering a sufficiency of the evidence claim, "the relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Sullivan v. Cuyler*, 723 F.2d 1077, 1083–84 (3d Cir. 1983) (citing *Jackson*, 443 U.S. at 319). In New Jersey, in addition to the element of force, robbery requires that a defendant use force "in the course of committing a theft," which includes "an attempt to commit theft." N.J. Stat. Ann. § 2C:15-1(a). The statute defines theft as when a person "unlawfully takes, or exercises unlawful control over, movable property of another with purpose to deprive him thereof." N.J. Stat. Ann. § 2C:20-3(a).

There was ample trial testimony when viewed in the light most favorable to the prosecution to convict Petitioner of second-degree robbery. Indeed, Sloat testified that prior to the attack at the motel, he had had conversations with Petitioner about owing money and Petitioner said "he was going to get at [Sloat]." (ECF 7-5 at 32). Kristen Ellis also testified that she had previously spoken to Petitioner and that Petitioner was looking for Sloat so that he could beat him up because Sloat owed him money. (*See id.* at 65). Opher also testified that they were looking for Sloat because he purportedly owed Petitioner money. (*See id.* at 80). Opher further testified that he pled guilty to attempted theft because the intent was to get Petitioner's money from Sloat. (*See id.* at 91). Given this trial testimony, the state courts did not act contrary to or unreasonably apply clearly established federal law on this sufficiency of the evidence claim, nor was the denial of this claim based on an unreasonable determination of the facts. Claim IV is denied.

E. <u>Claim V – Petitioner was denied a fair trial due to the variance between the prosecutor's presentation to the grand jury that the first-degree robbery charge was based on the taking of Sloat's cell phone, but at trial the prosecutor based the first-degree robbery charge on money Petitioner thought Sloat owed him</u>

Claim V is essentially making a similar argument as in Claim II, namely that Petitioner was denied a fair trial when the prosecutor changed theories for the robbery charge from what was argued to the grand jury (cell phone), compared to the basis for the robbery charge as to what was argued to the trial jury (money). For the reasons essentially expressed in *supra* Part IV.B, Petitioner was not denied a fair trial based on this argument. Accordingly, Claim V is denied.

F. <u>Claim VI – Jury charge was misleading and contrary to the robbery charge Petitioner was indicted on</u>

In Claim VI, Petitioner argues that the trial judge's instruction on the lesser included offense of theft for the taking of the cell phone was confusing and "did not make any sense." (ECF 3 at 25). Petitioner raised this claim on direct appeal which the New Jersey Superior Court, Appellate Division summarily denied.

This Court has already outlined in *supra* Parts IV.C and D, the elements needed to convict Petitioner of robbery as compared to theft as well as how the trial judge instructed the jury upon questioning from the jury as to the differences between the robbery and theft charges on the verdict sheet. For similar reasons discussed in *supra* Part IV.C and D, this Court finds Petitioner is also not entitled to federal habeas relief on Claim VI.

G. <u>Claim VII – Petitioner was denied a fair trial due to variance between prosecutor's representation before the grand jury that second-degree burglary charge was for the purpose of robbing cell phone whereas at trial, prosecutor represented that the robbery was based on money purportedly owed to Petitioner</u>

In Claim VII, Petitioner argues he was denied a fair trial due to a variance between what the prosecutor represented before the grand jury on the second-degree burglary charge compared to what was argued at trial. More specifically, Petitioner, similar in many respects to Claim II,

basically argues he was denied a fair trial because the grand jury prosecutor used the robbery of the cell phone as the basis for the burglary charge, but the trial prosecutor used the money as the basis. For similar reasons discussed in Claim III, Petitioner is also not entitled to federal habeas relief on this claim. Accordingly, Claim VII is denied.

H. Claim VIII – Ineffective assistance of trial counsel for failing to move to suppress the cell phone

In Claim VIII, Petitioner argues trial counsel was ineffective for failing to move to suppress Sloat's cell phone which was found in Petitioner's car as it was illegally seized. The last reasoned decision on this claim was from the New Jersey Superior Court, Law Division in a written opinion which first set out the ineffective assistance of counsel standard as follows:

> Claims of ineffective assistance of counsel are governed by the standard articulated in Strickland v. Washington, 466 U.S. 668 91984), and adopted by the New Jersey Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987). To be entitled to a new trial based on ineffective assistance of counsel a defendant must make a two part showing:

>> First, the defendant must how that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second the Defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown of the adversary process that renders the result unreliable.

> Fritz, 105 N.J. at 52 (quoting Strickland, 466 U.S. at 687).

> With respect to the first prong, judicial scrutiny must be "highly deferential" in determining whether defense counsel's representation was deficient. State v. Norman, 151 N.J. 5, 37 (1997); State v. Arthur, 184 N.J. 307, 318 (2004). The court must

avoid scrutinizing defense counsel's performance under "the distorting effects of hindsight." Norman, 151 N.J. at 37. In fact, because of the difficulty in evaluating a defense counsel's tactical decisions from his or her perspective, a "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

Relative to the second prong of a Strickland claim, the prejudice determination requires a defendant to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. This evaluation requires the court to consider the "quantum and quality of the evidence." State v. Marshall, 148 N.J. 89, 157 (1995). . . .

Claims of ineffective assistance of counsel are well suited for post-conviction relief because the facts frequently lie outside of the trial record. [State v.] Precoise, 129 N.J. [451,] 462 [(1992)]. Because of the lack of facts, courts are more likely to permit an evidentiary hearing for such cases where counsel can explain the reasons for his conduct and inaction. Id. (quoting State v. Sparano, 249 N.J. Super. 411, 419 (App. Div. 1991)). However, R. 3:22-1 does not require an evidentiary hearing to be held on petitions for post-conviction relief. The decision to hold an evidentiary hearing falls under the discretion of the judge. R. 3:22-10.

The New Jersey Supreme Court held in Precoise that the trial court should grant evidentiary hearings to resolve ineffective assistance of counsel claims if the defendant presents a prima facie claim in support of post-conviction relief and the facts supporting the claim are outside the trial record. Precoise, 129 N.J. at 462. However, in order to establish a prima facie claim, a defendant "must do more than make bald assertions that he was denied the effective assistance of counsel. He must allege facts sufficient to demonstrate counsel's allegedly substandard performance." State v. Cummings, 321 N.J. Super., 154, 170 (App. Div. 1999). Accordingly, when a defendant claims that his trial attorney inadequately investigated his case or failed to prepare his defense, he must assert the facts that an investigation would have revealed, "supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification." Id.

22

> With respect to the second prong of the Strickland test, the Court found that but for counsel's errors, the result would have been different. Strickland, 466 U.S. at 694. This is noted as a probability "sufficient to undermine confidence in the outcome." State v. O'Neil, 219 N.J. 598, 611 (2014). In the present matter, that would indicate the undermining in the jury verdicts. In some instances, jurors are given curative instructions at trial. The Trial Court is in the best position to determine whether a curative instruction will remove any prejudice to a defendant in order to avoid a mistrial. State v. Loftin, 146 N.J. 295, 365-66 (1996). It is deemed that the jury will understand and take notice of any curative instructions in order to avoid prejudice, and their decision is not tainted by prejudice.

(ECF 8-19 at 15-17).  With respect to applying the applicable law cited above, the court then analyzed and denied this claim as follows:

> Mr. Love contends that a suppression motion regarding the cellphone should have been filed.  This argument is without merit. Despite Mr. Love's assertion that the February 1, 2011 Order, in . . . another indictment, suppressed the cellphone found in the Pontiac vehicle, that is incorrect.  The February 1, 2011 Order suppressed any evidence found pursuant to the warrantless search [emphasis added] of the vehicle when parked at 30 Katz Way that revealed controlled dangerous substance prior to obtaining the search warrant.  Subsequently, a search warrant was obtained and another search of the vehicle was conducted at the towing lot which revealed two cell phones, one of which was determined to be Mr. Sloat's cellphone.  Moreover, even if the suppression of the cellphone was meritorious, it was not a crucial piece of evidence in the case. Despite the cellphone being seized pursuant to a warrant, the motive of the robbery of Mr. Sloat was not a cellphone but rather to collect on a debt owed to Mr. Love.

(ECF 8-19 at 18-19).

In *Strickland v. Washington,* 466 U.S. 668 (1984), the Supreme Court articulated a two-prong test for demonstrating when a petitioner is entitled to federal habeas relief on an ineffective assistance of counsel claim.  First, a petitioner must show that considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  *See id.* at 688; *see also*

*Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013) (noting that it is necessary to analyze an ineffectiveness claim considering all of the circumstances) (citation omitted).  A petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment.  *See Strickland*, 466 U.S. at 690.  Under the first prong of *Strickland*, scrutiny of counsel's conduct must be "highly deferential." *See id.* at 689.  Indeed, "[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.  The reviewing court must make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.  If counsel makes "a thorough investigation of law and facts" about his plausible options, the strategic choices he makes accordingly are "virtually unchallengeable." *Gov't of Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1432 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 690-91).  If, on the other hand, counsel pursues a certain strategy after a less than complete investigation, his choices are considered reasonable "to the extent that reasonable professional judgments support the limitations on investigation." *Rolan v. Vaughn*, 445 F.3d 671, 682 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 690-91).

The second prong of *Strickland* requires a petitioner to affirmatively show prejudice. *See* 466 U.S at 693.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*; *see also McBridge v. Superintendent, SCI Houtzdale*, 687 F.3d 92, 102 n.11 (3d Cir. 2012).  "This does not require that counsel's actions more likely than not altered the outcome, but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and

matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011) (internal quotation marks and citations omitted).

"With respect to the sequence of the two prongs, the *Strickland* Court held that 'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'" *Rainey v. Varner*, 603 F.3d 189, 201 (3d Cir. 2010) (quoting *Strickland*, 466 U.S. at 697).

When assessing an ineffective assistance of counsel claim in the federal habeas context, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," which "is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Grant*, 709 F.3d at 232 (quoting *Harrington*, 562 U.S. at 101). "A state court must be granted a deference and latitude that are not in operation when the case involves [direct] review under the *Strickland* standard itself." *Id.* Federal habeas review of ineffective assistance of counsel claims is thus "doubly deferential." *Id.* (quoting *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011)). Federal habeas courts must "take a highly deferential look at counsel's performance" under *Strickland*, "through the deferential lens of § 2254(d)." *Id.* (internal quotation marks and citations omitted).

The New Jersey Superior Court, Law Division did not act contrary to, or unreasonably apply clearly established federal law in denying this claim nor was its denial based on an unreasonable determination of the facts. As it noted, the cellphone was of minimal importance

given the motive behind the robbery, which was money Sloat purportedly owed to Petitioner, not

Sloat's cellphone.  Claim VIII is denied.

I. <u>Claim IX – Petitioner's motion for judgment of acquittal and a new trial should have been granted</u>

In Claim IX, Petitioner initially states that his motion for judgment of acquittal and a new

trial should have been granted.  In the context of analyzing Petitioner's PCR petition related to

trial counsel's purported failure to bring a motion for acquittal or a new trial, the New Jersey

Superior Court, Law Division noted as follows:

> Relevant to a motion for a new trial, a review of the transcripts
> makes clear that this too would have been fruitless.  Mr. Love was
> identified as one of three individuals that attacked Mr. Sloat in the
> motel room.  Mr. Opher, a co-defendant to the instant matter,
> testified that they were in Mr. Sloat's hotel room to take money from
> Mr. Sloat for Lemont Love.  Mr. Love was apprehended with Mr.
> Williams shortly after the robbery.  Mr. Love was wearing the same
> clothes and matched the description given to the police by Mr. Sloat.
> In addition, another witness, Kristen Ellis, testified at trial that all
> three of the co-defendants were on top of Mr. Sloat – kicking and
> punching him in the head and back.  <u>See</u> T. May 12, 2011 at 127:24
> to 128:3.  Mr. Sloat also specifically identified Mr. Love as one of
> the three individuals that had assaulted him in the motel.

(ECF 8-19 at 19).  Even Petitioner in his amended habeas petition admits that this claim has no

merit.  (*See* ECF 3 at 26).  Thus, given this admission and upon review of the evidence at trial, this

claim is denied.

J. <u>Claim X – Cumulative Error from Claims I-V</u>

In Claim X, Petitioner argues that he is entitled to relief due to the cumulative effect of the

errors cited in Claims I-V.  Petitioner raised this argument on direct appeal.  The New Jersey

Superior Court, Appellate Division summarily denied this claim.

A claim for cumulative error is, "[i]ndividual errors that do not entitle a petitioner to relief

may do so when combined, if cumulatively the prejudice resulting from them undermined the

fundamental fairness of his trial and denied him his constitutional right to due process." *Fahy v. Horn*, 516 F.3d 169, 205 (3d Cir. 2008); *see also United States v. Roland*, 545 F. App'x 108, 117 (3d Cir. 2013). "Reversal is warranted only when 'the[ ] errors, when combined, so infected the jury's deliberations that they had a substantial influence on the outcome of the trial.'" *Roland*, 545 F. App'x at 117 (quoting *United States v. Hill*, 976 F.2d 132, 145 (3d Cir. 1992)); *see also Albrecht v. Horn*, 485 F.3d 103, 139 (3d Cir. 2007) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)) ("Cumulative errors are not harmless if they had a substantial and injurious effect or influence in determining the jury's verdict, which means that a habeas petitioner is not entitled to relief based on cumulative errors unless he can establish 'actual prejudice.' ").

This Court has already outlined that Claims I-V have no merit. Furthermore, to the extent there was any purported error within those claims, they certainly did not have a substantial and injurious effect or influence on the jury's verdict. The case against Petitioner was strong as outlined by the state court opinions reviewing Petitioner's conviction and noted by this Court already in this Opinion. Claim X is denied.

K.  Claim XI – Petitioner's sentence was illegal because the court failed to consider imposing a discretionary extended term pursuant to N.J. Stat. Ann. § 2C:44-3

In Claim XI, Petitioner argues his sentence was illegal because the trial court failed to consider whether to impose a discretionary extended term pursuant to N.J. Stat. Ann. § 2C:44-3. Petitioner raised this claim on direct appeal which the New Jersey Superior Court, Appellate Division summarily rejected.

Petitioner gives no reason within his amended habeas petition why he should not have been sentenced to an extended term. Petitioner was sentenced to twelve years imprisonment for his convictions, some of which included convictions for crimes in the second-degree. Petitioner's

sentence was within the ten-to-twenty-year period for an extended term in New Jersey on second-degree convictions. *See* N.J. Stat. Ann. § 2C:43-7(a)(3).

Furthermore, as to the applicable constitutional law:

> "[a] federal court's ability to review state sentences is limited to challenges based upon proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigencies.'" *Merritt v. Bartkowski*, No. 11–3756, 2013 WL 4588722, at *15 (D.N.J. Aug. 28, 2013) (quoting *Grecco v. O'Lone*, 661 F. Supp. 408, 415 (D.N.J. 1987) (citation omitted)). Thus, a challenge to a state court's discretion at sentencing is not reviewable in a federal habeas proceeding unless it violates a separate federal constitutional limitation. *See Pringle v. Court of Common Pleas*, 744 F.2d 297, 300 (3d Cir. 1984). *See also* 28 U.S.C. § 2254(a); *Estelle* [*v. McGuire*], 502 U.S. [ ] 62, 67 [(1991)].

*Burns v. Warren*, No. 13–1929, 2016 WL 1117946, at *43 (D.N.J. Mar. 22, 2016). With respect to showing that a sentence is cruel and unusual,

> [t]he Supreme Court has explained that the "Eighth Amendment, which forbids cruel and unusual punishments, contains a narrow proportionality principle that applies to non-capital sentences." *Ewing v. California*, 538 U.S. 11, 20, 123 S. Ct. 1179, 1185, 155 L.Ed.2d 108 (2003) (citations omitted). A court must consider three proportionality factors when evaluating Eighth Amendment challenges: (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for commission of the same crime in other jurisdictions. *Solem v. Helm*, 463 U.S. 277, 290–92, 103 S. Ct. 3001, 3010, 77 L. Ed. 2d 637 (1983). In conducting this analysis, a court grants substantial deference to legislative decisions regarding punishments for crimes. *United States v. Rosenberg*, 806 F.2d 1169, 1175 (3d Cir.1986); [*United States v.*] *Miknevich*, 638 F.3d [178,] [ ] 186 [(3d Cir. 2011)]("Generally, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment . . . because we accord substantial deference to Congress, as it possesses broad authority to determine the types and limits of punishments for crimes.").
>
> The first factor acts as a gateway prong to the proportionality inquiry. The Eighth Amendment, after all, only forbids sentences that are "grossly disproportionate" for a conviction for the crime

> involved.  If the defendant fails to demonstrate a gross imbalance
> between the crime and the sentence, a court's analysis of an Eighth
> Amendment challenge is at an end.  Successful proportionality
> challenges in non-capital cases are "exceedingly rare." *Ewing,* 538
> U.S. at 21, 123 S. Ct. at 1185 (quoting *Rummel v. Estelle,* 445 U.S.
> 263, 272, 100 S. Ct. 1133, 1138, 63 L. Ed. 2d 382 (1980)).

*United States v. Burnett,* 773 F.3d 122, 136–37 (3d Cir. 2014).

Petitioner fails to show that the denial of his claim was contrary to, or an unreasonable

application of clearly established federal law, or that its denial was based on an unreasonable

determination of the facts.  A defendant can be given an extended term under New Jersey law

where he:

> has been convicted of a crime of the first, second or third degree and
> is a persistent offender.  A persistent offender is a person who at the
> time of the commission of the crime is 21 years of age or over, who
> has been previously convicted on at least two separate occasions of
> two crimes, committed at different times, when he was at least 18
> years of age, if the latest in time of these crimes or the date of the
> defendant's last release from confinement, whichever is later, is
> within 10 years of the date of the crime for which the defendant is
> being sentenced.

N.J. Stat. Ann. § 2C:44-3(a).  Indeed, the prosecutor and the trial judge noted this as a reason for

giving Petitioner an extended term.  Petitioner does not contest this point in his amended habeas

petition.  As indicated above, Petitioner was sentenced to twelve years, well within the ten-to-

twenty-year sentencing range, and far less than the prosecutor requested (eighteen years).  There

was no constitutional violation with Petitioner's extended term sentence.  Claim XI is denied.

L.  Claim XII – Ineffective assistance of counsel for failing to raise selective prosecution

In Claim XII, Petitioner claims that trial counsel was ineffective for failing to raise an issue

of selective prosecution.  More specifically, Petitioner alleges that trial counsel was ineffective for

failing to argue that the prosecutor engaged in selective prosecution when Julia Shah was not

charged.  Petitioner notes that she is Caucasian and the three individuals who were charged were African-American.

Petitioner raised this claim during his PCR proceedings.  The New Jersey Superior Court, Law Division analyzed and denied this claim as follows:

> Mr. Love . . . argues that trial counsel was ineffective for failing to raise the issue of selective prosecution.  Specifically, that Julia Shah, Mr. Love's then-girlfriend, should have been indicted as a result of her alleged involvement in the underlying matter.  This Court disagrees.  There was no evidence that Ms. Shah agreed to aid or participate in any robbery or aggravated assault.  The only facts presented indicated that Ms. Shah was a passenger in Mr. Love's car and that she may have told Mr. Love where she was staying the night before and who was staying there with her.  There was also evidence that Mr. Love may have been abusive to Ms. Shah and that Ms. Shah was fearful of Mr. Love.  Upon consideration of the evidence, the Grand Jury previously decided that there was not enough information to charge Ms. Shah as an accomplice.  The lack of evidence was the reason Ms. Shah was not indicted, not selective prosecution as the defendant suggests.  The Grand Jury found that there was probable cause to indict Mr. Love for first degree robbery.  Mr. Love was ultimately acquitted of the first degree robbery charge but was found guilty of the lesser included offenses including second degree robbery.

(ECF 8-19 at 17-18).  On appeal, the New Jersey Superior Court, Appellate Division agreed with the Law Division's denial of this claim, stating as follows:

> Defendant's petition alleged his trial counsel provided ineffective assistance because he failed to raise the issue of selective prosecution.  According to defendant, his trial counsel should have pursued a selective prosecution claim based upon his contention that the attack at the motel was the fault of his girlfriend at the time, J.S., a Caucasian.  The PCR judge properly rejected defendant's selective prosecution claim because there was no evidence that J.S. was involved in the robbery.  In fact, the judge noted the evidence produced at trial showed that J.S. feared defendant.  If defendant wanted to call J.S. as a witness, he could have done so.

*Love*, 2019 WL 1111138, at *4.

The state courts properly noted that it was due to a lack of evidence rather than selective prosecution that led to Shah not being charged. Indeed, at one point during the grand jury proceedings, the grand jury prosecutor was asked by a grand juror whether they could potentially charge Shah as well, to which the prosecutor explained as follows, "[i]f you think she's an accomplice, you can consider that as well. You can consider anything you want, if you want to add a person, that's fine. If you think there's enough information for that." (ECF 7-1 at 29-30).

Petitioner fails to show that the state courts acted contrary to or unreasonably applied *Strickland* and its progeny or that the denial of this claim by the state courts was based on an unreasonable determination of the facts. Claim XII is denied.

M. <u>Claim XIII – Trial counsel was ineffective for failing to request attempt charge to robbery count and appellate counsel was ineffective for not raising this issue on appeal</u>

Next, Petitioner argues that trial counsel was ineffective for failing to request an attempt jury instruction to the robbery counts and that appellate counsel was ineffective for not raising this issue on appeal. Petitioner raised this issue during his PCR proceedings. The last reasoned decision is from the New Jersey Superior Court, Appellate Division which denied this claim as follows, "Defendant's contention that his trial counsel should have requested an instruction on the law of attempted theft clearly lacks merit. The trial judge did instruct the jury on the crime of attempt, during the instruction on aggravated assault." *Love*, 2019 WL 1111138, at *4.

The denial of this ineffective assistance of counsel claim by the Appellate Division was not contrary to or an unreasonable application of clearly established federal law, nor was the denial based on an unreasonable determination of the facts.[2] As noted by the New Jersey Superior Court,

---

[2] "[C]laims of ineffective assistance of appellate counsel are also governed by the *Strickland* standard." *Lusick v. Palakovich*, 270 F. App'x 108, 110 (3d Cir. 2008) (citing *United States v. Mannino*, 212 F.3d 835, 840 (3d Cir. 2000)). While appellate counsel's decisions are subject to the same ineffective assistance standard applicable to trial counsel claims, *see Smith v. Robbins*, 528 U.S. 259, 285 (2000), "it is a well established principle . . . that counsel decides which issues

Appellate Division, the trial judge did define attempt in the jury instructions, and also specifically

relayed it back to the robbery charge, in addition to the aggravated assault charge. (*See* ECF 7-7

at 94-95). Petitioner's argument within Claim XIII is factually inaccurate. Accordingly, he is not

entitled to federal habeas relief on Claim XIII.

N. Claim XIVa – Ineffective assistance of counsel for failing to assure that Petitioner was confronted with all of the witnesses to his prosecution

In Claim XIVa, Petitioner claims that trial counsel was ineffective in failing to assure that

Petitioner was confronted with all witnesses relevant to his prosecution. More specifically,

Petitioner asserts as follows in his amended habeas petition:

> The prosecutor's theory of the case was the victim introduced petitioner to a "girl" for a drug deal. The petitioner gave the girl the drugs but she beat him for the money. As a result petitioner held the victim accountable for the girls actions and felt like he owed him the money she beat him for; thus, formed the intent to take money for which petitioner was convicted. During direct when the State asked their witness about the money at issue, the witness falsely stated that he and petitioner had a conversation about this girl taking his money and he was going to get at the witness as a result of it. Petitioner told his lawyer that was a lie and the victim never introduced him to a girl or had any such conversation and begged his lawyer to challenge the veracity of the claims by compelling the state to produce the witness. Counsel refused to do so and petitioner tried to object to those lies but the court cut him off and would not let him speak because he had a lawyer. The witness was never produced nor was the identity of the witness revealed.

(ECF 3 at 29).

---

to pursue on appeal," *Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996), and appellate counsel need not raise every nonfrivolous argument a defendant wishes to pursue. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). As the chief component of effective appellate advocacy is the winnowing out of weaker claims in favor of those with a greater chance of success, *see id.* at 753; *see also Smith v. Murray*, 477 U.S. 527, 536 (1986), the United States Supreme Court has held that "[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome." *See Robbins*, 528 U.S. at 288 (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)).

This claim is in essence a claim against trial counsel for failing to investigate and produce a witness. Petitioner raised this claim during his PCR proceedings where it was summarily denied without discussion. The denial of this claim was not contrary to or an unreasonable application of clearly established federal law, nor was the denial based on an unreasonable determination of the facts for the following reasons.

In the ineffective assistance of counsel context, "[p]rejudice 'requires more than just a 'conceivable' likelihood of a different result." *Ali v. Nogan*, No. 13-7364, 2016 WL 8678443, at *7 (D.N.J. Apr. 1, 2016) (quoting *Grant v. Lockett*, 709 F.3d 224, 235 (3d Cir. 2013) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 792 (2011) (other citations omitted). In *Duncan v. Morton*, 256 F.3d 189, 202 (3d Cir. 2001), the United States Court of Appeals for the Third Circuit found that a habeas petitioner's failure to present any sworn testimony by the witnesses the habeas petitioner claimed counsel should have investigated and called as witnesses amounts to a failure to establish *Strickland* prejudice. *See id.* ("In light of Duncan's failure to present any sworn testimony *by Sherman*, he has failed to establish prejudice as a result of [counsel's] failure to interview Sherman.") (emphasis added).

Petitioner does not even note the name of this purported witness that trial counsel failed to investigate, let alone call to testify. He further provides this Court with no sworn testimony from this unnamed witness that would have changed the outcome of his trial to a reasonable probability. The case against Petitioner was strong. It included testimony from several eyewitnesses expressly implicating Petitioner in his convicted crimes as well as forensic evidence implicating Petitioner in the crimes. For these reasons, Petitioner has not shown prejudice. Therefore, Claim XIVa is denied.

O. Claim XIVb – Trial counsel failed to present an adequate defense

In Claim XIVb, Petitioner raises three separate and distinct ineffective assistance of counsel claims. First, he realleges that trial counsel was ineffective for failing to move to suppress Sloat's cell phone. This Court has already analyzed and denied that claim in *supra* Part IV.H and need not do so again here.

Next, Petitioner alleges that trial counsel was ineffective for failing to examine a "prior incident." More specifically, Petitioner argues as follows in his amended habeas petition:

> The victim had been assaulted on Feb. 16, 2010, hours prior to the alleged robbery which petitioner was convicted of. The incident on the 16th resulted in the victim being stomped on with "timberland boots" which left timberland boot impressions on his back. Petitioner had two witnesses who were willing to testify to the prior assault. Also, on the victim's cellphone there were messages of people threatening the victim because he stole their money to get high. Defense counsel neither called the witnesses nor produced the test messages off of the victim's phone. The state used the injuries the victim sustained in the prior assault to get petitioner convicted of aggravated assault. Had the jury had doubts about who caused which injuries, they would've been compelled to have found the petitioner not guilty.

(ECF 3 at 31).

The last reasoned decision on this claim was from the New Jersey Superior Court, Law Division during Petitioner's PCR proceedings. That court analyzed and denied this claim as follows:

> Mr. Love suggested that two witnesses, Michael Saris and Eddie Dragustine could have testified regarding a prior assault of Mr. Sloat. Although one certification, dated September 28, 2016 was provided by Mr. Love regarding Mr. Dragustine, no information was provided regarding Mr. Saris. Even if Mr. Dragustine could have testified, physical evidence was presented at trial linking Mr. Love to the crime charged. Specifically, Mr. Sloat's shirt had three different tread marks on it - a result of being kicked multiple times during the attack at the motel.

> Shortly after the incident, the three co-defendants were stopped in a vehicle and picked up by police. All three of the defendants' shoes were taken as evidence. Photographs of Mr. Sloat's shirt with the three different shoe tread marks were presented to the jury along with the shoes seized from the three co-defendants. The jury found that the three pairs of shoes matched the three different shoe print marks on Mr. Sloat's shirt, one pair of which belonged to Mr. Love. Additionally, the victim's blood was found on Mr. Love's sneakers and there was testimony from multiple witnesses who indicated Mr. Love was not only present and involved in the incident but was essentially the main reason the incident had occurred.

(ECF 8-19 at 20-21).

The denial of this claim was not contrary to or an unreasonable application of clearly established federal law, nor was its denial based on an unreasonable determination of the facts. Petitioner did not include a certification from Saris in his PCR proceedings, but he did include one from Dragustine. (*See* ECF 8-15 at 3). Dragustine states as follows in his certification:

> A few years ago, I was talking to Michael Saris, a.k.a. Mikey, about an ass-whooping of a lifetime that Darren Sloat had received when Mikey told me that Lemont Love was locked up for that assault. I also learned its common knowledge that Mr. Love was blamed for the assault on Darren Sloat that he didn't do and was lied on and sent to prison. I was there and know for a fact that Darren Sloat was assaulted prior to his incident with Mr. Love and the guy that assaulted him was a tall white guy who goes by the name of Speedy. Darren Sloat had stolen Speedy's girlfriend's money; her name was Carissa, and I was standing right next to Mr. Sloat when Speedy confronted him at the party in Motel 6. He didn't do much talking before punching Mr. Sloat in the face several times. When he fell Speedy stomped and kicked Darren Sloat violently until me and several other party goers broke it up for fear he was going to kill Darren, who was helplessly curled up in the fetal position.
>
> At the time of Mr. Love's trial, I didn't know that Mr. Sloat and everybody else was blaming Mr. Love for those injuries but that is a blatant lie. I even told Kristen Ellis that she was wrong for lying on Mr. Love like that and that she should do the right thing and tell the truth. I'm friends with Ms. Ellis but she is wrong for what she did and is doing. Mr. Sloat is a lying conniving scumbag and a drug addict. He stole from his own mother to get high with no remorse.

> He stole from Kristen's Mother as well. I don't understand how the
> prosecutor can continue with these lies.
>
> Had I been called to testify as a witness at trial, I would have and
> am still willing to testify to what I personally witnesses [sic] as well
> as to the knowledge that I have about Mr. Love being blamed for the
> injuries Darren received the night before. I wasn't notified that Mr.
> Love had been on trial, I only learned that he lost trial.
>
> I didn't know that I could help out in this case still but recently I was
> contacted by Christine on behalf of Mr. Love who was looking for
> Mr. Saris's information, that's when I learned my statement is
> relevant and that's why I am writing this certification.
>
> This is not all the knowledge I have about this incident.

(ECF 8-15 at 3).

Initially, Petitioner fails to come forward with any sworn statement from Saris regarding what he would have testified to such that he fails to show to a reasonable probability that the outcome of the proceeding would have been different. *See Duncan*, 256 F.3d at 202. Accordingly, the state courts' denial of this claim related to Saris was not contrary to, or an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts.

Nevertheless, Petitioner provided the state courts with a certification from Dragustine cited above. However, the case against Petitioner was strong. It included not only eyewitnesses but also forensic evidence clearly implicating Petitioner in the crimes for which he was convicted. Accordingly, Petitioner fails to show how these two witnesses (one of which Petitioner never submitted a sworn statement from), would have changed the outcome of his trial to a reasonable probability.

Within Claim XIVb, Petitioner also argues that trial counsel was ineffective for failing to move for an acquittal or new trial because the state never established that he either took money or

attempted to take money. After Petitioner was convicted, but prior to sentencing, Petitioner's counsel made a motion for a new trial. (*See* ECF 8-2 at 2 (trial judge noting Petitioner's trial counsel had made a motion for a new trial). Thus, Petitioner's argument appears wrong based on the facts. However, to the extent that Petitioner is asserting that counsel failed to make a motion based on the specific arguments made in this claim, he is not entitled to federal habeas relief. Indeed, for the reasons previously discussed, there was more than enough evidence to find Petitioner guilty of second-degree robbery based on the attempt to take Sloat's money. Thus, a motion for new trial also lacked merit such that Petitioner was not prejudiced. Therefore, Claim XIVb is denied.

P. Claim XV – Sentence imposed was not in accord with NERA

In Claim XV, Petitioner claims that his sentence was not in accordance with NERA. This Court need not engage in a discussion on this claim because Petitioner now states this issue is moot. (*See* ECF 3 at 32).

Q. Claim XVI – Conviction should be reversed because trial judge previously prosecuted Petitioner when he was a county prosecutor

In Claim XVI, Petitioner argues that his conviction should be reversed because the trial judge in this case previously prosecuted him in a prior criminal case when he was a county prosecutor. Petitioner raised this claim during his PCR proceedings. The last reasoned decision on this claim was from the New Jersey Superior Court, Appellate Division which analyzed and denied this claim as follows:

> Before the PCR judge, defendant also claimed the trial judge should have recused himself because the judge previously served as the Middlesex County Prosecutor from 1998 to 2002, when defendant was prosecuted for other crimes. The PCR judge correctly rejected this claim since the trial judge did not personally participate in defendant's prior case, which concerned indictments from 1998.

*Love*, 2019 WL 1111138, at *4.

Although "[i]t is axiomatic that [a] fair trial in a fair tribunal is a basic requirement of due process[,] . . . most matters relating to judicial disqualification [do] not rise to a constitutional level." *Caperton v. A.T. Massey Coat Co.*, 556 U.S. 868, 876 (2009) (internal citations and quotations omitted). The Due Process Clause will only require the disqualification of a trial judge under certain limited sets of circumstances including where the judge has "a direct, personal, substantial, pecuniary interest in a case," and where a judge has a conflict arising out of "his participation in an earlier proceeding" and that prior involvement, such as where the judge charges a defendant with criminal contempt, ensures that the judge "cannot be, in the very nature of things, wholly disinterested in the conviction or acquittal of the accused." *Id.* at 876-81. Where a claim of this second type is raised, the inquiry involved is objective – the question is not whether the judge "is actually, subjectively biased, but whether the average judge in his position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias.'" *Id.* at 881. A due process violation will only be found where the judge "would have been required to recuse herself." *McKernan v. Superintendent Smithfield SCI*, 849 F.3d 557, 565 n.44 (3d Cir. 2017).

The state court's factual findings that the trial judge was not involved whatsoever in Petitioner's prior criminal case is entitled to a presumption of correctness that can only be rebutted by clear and convincing evidence." *See* 28 U.S.C. § 2254(e). Petitioner fails to do so here. Given that, and based on the caselaw cited above, this Court finds that Petitioner fails to show that the denial of this claim by the state courts was contrary to or an unreasonable application of clearly established federal law, or that the denial of this claim was based on an unreasonable determination of the facts. *See, e.g., Nelson v. Kansas*, No. 10-3135, 2011 WL 2462495, at *10 (D. Kan. June 17, 2011) (noting that the United States Supreme Court has not held that the mere appearance of

bias on the part of a state judge, without more, violates the Due Process Clause) (citations omitted);

Accordingly, Claim XVI is denied.

R.  Claim XVIIa – Sloat committed perjury

In Claim XVIIa, Petitioner alleges that Sloat committed perjury about a drug deal gone bad

which is why Petitioner purportedly thought Sloat owed him money.  Some of background of this

claim is best explained by the New Jersey Superior Court, Appellate Division during Petitioner's

PCR proceedings:

> During a pretrial hearing, the assistant prosecutor reported to the
> trial judge that she had talked to Sloat for the first time since the
> grand jury proceedings, and he told her, for the first time, that an
> unidentified female actually owed defendant the money, not Sloat.
> Sloat essentially claimed that he brokered a drug deal between the
> woman and defendant, and that she ripped defendant off, and
> defendant blamed Sloat for the incident.  To his credit, defendant's
> trial counsel objected, stating the evidence is "highly prejudicial,"
> as the evidence would "tell the jury [defendant] sold some drugs to
> some girl" and the evidence further "might be related somehow to
> the motive."  The trial judge agreed, and a compromise was made
> whereby no mention of the female or drugs would occur at trial, but
> the State could assert that defendant was seeking to collect money
> from Sloat.

*Love*, 2019 WL 1111138, at *3.  Petitioner raised this issue during his PCR proceedings and it was

summarily denied.

The prosecution's knowing use of perjured testimony violates the Fourteenth Amendment.

*See Giglio v. United States*, 405 U.S. 150, 153 (1972); *Napue v. Illinois*, 360 U.S. 264, 269 (1959).

"Perjury is the willful, knowing and corrupt giving, under oath, of false testimony material to the

issue or point of inquiry."  *United States v. Rose*, 215 F.2d 617, 622–23 (3d Cir. 1954).  When

false testimony is presented, a conviction must be vacated "if there is any reasonable likelihood

that the false testimony could have affected the judgment of the jury."  *United States v. Biberfeld*,

957 F.2d 98, 102 (3d Cir. 1992).  Thus, a habeas petitioner must "show that (1) [the witness]

committed perjury; (2) the government knew or should have known of his perjury; (3) the testimony went uncorrected; and (4) there is any reasonable likelihood that the false testimony could have affected the verdict." *Lambert v. Blackwell*, 387 F.3d 210, 242 (3d Cir. 2004).

Petitioner fails to show that the denial of this claim was contrary to, or an unreasonable application of clearly established federal law, or that its denial in state court was based on an unreasonable determination of the facts. Petitioner fails to illustrate, at a minimum, that the government knew or should have known that Sloat was committing perjury. Indeed, other witnesses such as Ellis and Opher as described in *supra* Part IV.D buttressed Sloat's testimony with respect to the motive for Petitioner to get to Sloat was for money.

Additionally, it is worth noting that eyewitness testimony and forensic evidence placed Petitioner at the scene and as a perpetrator of the crimes for which he was convicted as explained *supra*. Thus, this Court finds that Petitioner fails to show to a reasonable probability that any purported false testimony on this point could have affected the jury's verdict. Accordingly, this claim is denied.

S. Claim XVIIb – Ineffective assistance of counsel for failing to investigate Sloat's perjured testimony

Claim XVIIb is in essence a rehashing of Petitioner's Claim in XIVb which this Court previously analyzed and denied. This Court need not do so again here in such detail. Therefore, Claim XVIIb is denied.

T. Claim XVIII – Trial counsel was ineffective for failing to present exculpatory evidence

In Claim XVIII, Petitioner makes numerous ineffective assistance of trial counsel arguments; they are as follows:

1. Michael Saris should have been called as a witness;

2. Unidentified girl victim introduced to Petitioner for a drug deal should have been called as a witness;

3. Trial counsel should have subpoenaed text messages from Sloat's cellphone;

4. Trial counsel should have requested a *Clawans*[3] charge;

5. Trial counsel failed to raise a confrontation clause argument related to counsel's failure to get the unknown "girl" witness who purportedly was involved in a drug deal with Petitioner;

6. Trial counsel failed to request an attempt jury charge;

7. Trial counsel failed to file a motion for acquittal;

8. Trial counsel failed to file a motion to suppress Sloat's cellphone;

9. Trial counsel failed to file a motion to suppress Petitioner's sneakers;

10. Trial counsel failed to prepare a defense by not calling witnesses related to a prior assault on Sloat; and

11. Trial counsel's failure to raise a defense of selective prosecution.

Each of these arguments are considered in turn.

     i.    *Trial counsel should have called Michael Saris as a witness*

This Court has already noted that Petitioner failed to include any type of certified/sworn statement from Saris as to whether he would have testified at Petitioner's trial, let alone what his testimony would have been. Accordingly, Petitioner fails to show that he was prejudiced under *Strickland*. Therefore, this argument within this claim is denied.

---

[3] *State v. Clawans*, 183 A.2d 77 (N.J. 1962).

ii.     *Trial counsel should have called "unidentified girl"*

This Court has also identified that there was no constitutional error in trial counsel's failure to call as a witness, at Petitioner's request, an "unidentified girl" who was purportedly involved in a drug deal gone bad.  Thus, this claim is without merit.

iii.    *Trial counsel should have subpoenaed text messages from Sloat's cell phone*

Next, Petitioner argues that counsel should have subpoenaed text messages from Sloat's cellphone.  Petitioner alleges that these messages would have supported the theory that Sloat was assaulted in a prior incident such that Petitioner should be found not guilty of his convicted crimes. This Court disagrees.

First, Petitioner has not come forward with what these text messages specifically said such that he has failed to show to a reasonable probability that they would have affected the judgment of conviction to a reasonable probability.  Furthermore, for the reasons previously stated, the evidence against Petitioner for his convictions was quite strong as it included eyewitnesses and forensic evidence.  Petitioner fails to show prejudice.  Therefore, this argument does not entitle Petitioner to federal habeas relief.

iv.     *Trial counsel should have requested a Clawans charge*

Next, Petitioner argues that trial counsel should have requested a *Clawans* charge related to the unnamed female associated with the drug deal gone bad.  More specifically, Petitioner claims that she does not exist such that the jury should have been instructed that the reason why she was not produced was because the State was lying about her existence.  The last reasoned decision on this claim was from the New Jersey Superior Court, Appellate Division during Petitioner's PCR proceedings which analyzed this claim as follows:

> During a pretrial hearing, the assistant prosecutor reported to the trial judge that she had talked to Sloat for the first time since the

grand jury proceedings, and he told her, for the first time, that an unidentified female actually owed defendant the money, not Sloat. Sloat essentially claimed that he brokered a drug deal between the woman and defendant, and that she ripped defendant off, and defendant blamed Sloat for the incident. To his credit, defendant's trial counsel objected, stating the evidence is "highly prejudicial," as the evidence would "tell the jury [defendant] sold some drugs to some girl" and the evidence further "might be related somehow to the motive." The trial judge agreed, and a compromise was made whereby no mention of the female or drugs would occur at trial, but the State could assert that defendant was seeking to collect money from Sloat.

Defendant argues that his trial counsel should have moved for a Clawans [footnote omitted] charge, "authoriz[ing] defendant to draw an adverse inference against the State during summation based on the State's failure to produce a witness with relevant evidence of the facts . . . ." According to defendant, "[s]ince the girl was the lynchpin of the State's case, the State had an obligation to produce her." However, defendant also asserts that "the defense contended that there was no drug deal, no money owed, and no girl." Defendant's argument is clearly convoluted and meritless – if there was no girl, then there was no witness that the State failed to produce. Moreover, nothing regarding the girl or the drug deal was admitted at trial, invalidating defendant's claim that it was the "lynchpin" of the State's case. In addition, defendant presented no argument as to how he was prejudiced by his counsel's alleged error.

*Love*, 2019 WL 1111138, at *3–4.

For the reasons essentially expressed by the New Jersey Superior Court, Appellate Division, this Court finds no reason to find that the denial of this claim was contrary to, or an unreasonable application of clearly established federal law, nor was the denial based on an unreasonable determination of the facts. Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

   v.   *Failure to raise confrontation clause violation related to unknown "girl"*

Next, Petitioner argues that trial counsel was ineffective in failing to raise a Confrontation Clause violation related to the unknown "girl" introduced to Petitioner from Sloat that resulted in

a drug deal gone bad. For the following reasons, Petitioner is not entitled to federal habeas relief on this argument.

The Confrontation Clause of the Sixth Amendment states that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. Pursuant to the Confrontation Clause, "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford v. Washington,* 541 U.S. 36, 59 (2004) (footnote omitted). "As to the second requirement, the Confrontation Clause requires that a defendant have had 'a full and fair opportunity to probe and expose [testimonial] infirmities' of an unavailable government witness in order for that witness's prior testimony to be admissible." *Ross v. Dist. Attorney of Cnty. of Allegheny,* 672 F.3d 198, 206–07 (3d Cir. 2012) (citing *United States v. Owens,* 484 U.S. 554, 558 (1988) (quoting *Delaware v. Fensterer,* 474 U.S. 15 (1985))). The Confrontation Clause applies to testimonial hearsay that is admitted to establish the truth of the matter asserted. *See Crawford,* 541 U.S. at 59 n.9 ("The [Confrontation] Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.") (citation omitted). "[S]tatements made under circumstances that would lead an objective witness reasonably to believe that the statement would be available for use at a later trial are testimonial." *United States v. Hinton,* 423 F.3d 355, 360 (3d Cir. 2005).

There was no Confrontation Clause violation in this case such that Petitioner's trial counsel's failure to raise such an argument was not ineffective. Indeed, Petitioner's theory was that there was no unknown "girl." Furthermore, Petitioner has not come forward with evidence of this unknown girl's testimonial evidence that was admitted at trial. Given this, Petitioner fails to show that counsel's performance fell below an objective standard of reasonableness and/or

certainly failed to show to a reasonable probability that the outcome of his trial would have changed had Petitioner's trial counsel made such an argument at trial. This argument does not warrant granting Petitioner federal habeas relief.

vi.     *Failure to request an attempt charge*

Next, Petitioner argues that trial counsel erred by not requesting a jury instruction on attempt. This Court has previously noted that the trial court *did* instruct the jury on attempt. Accordingly, to the extent that Petitioner is asserting that trial counsel was ineffective for failing to argue the trial court should instruct the jury as such is clearly without merit. This argument therefore does not warrant granting Petitioner federal habeas relief.

vii.    *Failure to file a judgment of acquittal motion*

Petitioner next argues within Claim XVIII that counsel was ineffective for failing to file a motion for acquittal because the government never established that Petitioner either took or attempted to take money. This Court has already concluded that there was more than sufficient evidence to convict Petitioner of second-degree robbery related to the purported attempt to take money from Sloat. Given this, this Court finds that Petitioner's argument that counsel failed to file a motion for acquittal on this point is without merit such that it is denied.

viii.   *Failure to file motion to suppress Sloat's cellphone*

Within Claim XVIII, Petitioner again asserts that counsel was ineffective for failing to file a motion to suppress Sloat's cellphone. However, this Court has already previously analyzed and rejected this claim such that further discussion here is unwarranted.

ix.     *Failure to file motion to suppress Petitioner's sneakers*

Next, Petitioner argues that counsel was ineffective in failing to file a motion to suppress his sneakers. In his amended federal habeas petition, Petitioner asserts as follows:

> Petitioner was first arrested in Spotswood, after being transported to
> Spotswood police department and getting processes for drug
> charges, he was transported to East Brunswick police department to
> be prosecuted for robbery.   Hours after being in the police
> department, while handcuffed to a bench surrounded by numerous
> law enforcement officers, one of the officers took petitioner's
> sneakers off his feet and placed them in evidence.  The police didn't
> have a warrant to search and seize petitioner's sneakers.  After they
> were sent to the lab it was learned that a spec of the victim's blood
> was on the sneakers.  This evidence was used to link petitioner to
> the crime.  Counsel failed to file a motion to suppress this evidence
> as a result of an illegal search and seizure.

(ECF 3 at 36-37).

Petitioner raised this issue during his PCR proceedings.  The state courts summarily denied this claim without discussion.  The denial of this claim was not contrary to, nor an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts.  The prosecution established Petitioner's motive for the robbery/assault in that Sloat purportedly owed Petitioner money.  Several eyewitnesses directly testified against Petitioner at trial that he was involved in the incident against Sloat at the motel.  Sloat's cellphone was found in Petitioner's vehicle.  Accordingly, even if this Court were to assume *arguendo*, that trial counsel should have moved to suppress the sneakers, Petitioner fails to show a reasonable probability that the outcome of his trial would have been different had his trial counsel so moved.  Accordingly, this claim is denied.

x.   *Failure to prepare a defense*

Petitioner next asserts within Claim XVIII that trial counsel failed to prepare a defense. More specifically, Petitioner claims as follows:

1. Sloat had been the victim of a prior assault and used those injuries to get Petitioner convicted such that had counsel called Petitioner's witnesses, he would not have been convicted;

2. Counsel failed to subpoena text messages from Sloat's cellphone; and

3. Counsel failed to investigate the unknown "girl" witness who established motive for the crime.

All these issues have been previously analyzed and rejected. Point 1 was analyzed, discussed and denied in *supra* Part IV.O; point 2 was analyzed discussed and denied in *supra* Part IV.T.iii; and point 3 was essentially analyzed, discussed and denied in *supra* Part IV.N. This Court need not analyze these claims again here.

 xi. *Failure to raise selective/malicious prosecution defense*

 Petitioner's final argument within Claim XVIII is that trial counsel failed to raise the issue of selective prosecution when Shah was not charged. Like several of Petitioner's other arguments within Claim XVIII, this Court has already analyzed this argument by Petitioner and rejected his assertion that this claim entitles him to federal habeas relief. This Court need not analyze it again here.

 Thus, for the foregoing reasons, Petitioner fails to show that he is entitled to federal habeas relief on any of his ineffective assistance of counsel claims within Claim XVIII.

U. Claim XIX – Ineffective assistance of appellate counsel

 In Claim XIX, Petitioner argues that appellate counsel was ineffective for failing to raise the issues raised within Claim XVIII. As Petitioner fails to show that he is entitled to federal habeas relief on his arguments within Claim XVIII regarding trial counsel's purported ineffectiveness, this Court also finds that Plaintiff fails to show that appellate counsel was

ineffective for not raising these meritless issues on appeal and/or that Petitioner fails to show to a reasonable probability that the outcome of his direct appeal would have been different had direct appellate counsel raised these issues. Accordingly, Claim XIX is denied.

V. Claim XX – Ineffective assistance of PCR counsel

In Claim XX, Petitioner argues that PCR counsel was ineffective. Petitioner is not entitled to federal habeas relief on this claim. Indeed, 28 U.S.C. § 2254(i) precludes claims for ineffective assistance of PCR counsel. *See also Martinez v. Ryan*, 566 U.S. 1, 17 (2012). Therefore, Claim XX is denied.

W. Claim XXI – Conviction must be reversed as it is the result of perjured testimony

In Claim XXI, Petitioner argues that trial counsel never investigated the veracity of the state's claim that the unknown mystery girl established the motive for the crime. He also claims in Claim XXI that counsel failed to call witnesses who could have testified to a prior assault against Sloat as well as rehashes his argument regarding Petitioner's failure to subpoena Sloat's text messages from his cell phone.

These issues have already been addressed, analyzed and denied. This Court need not rehash that analysis and discussion here. Claim XXI is denied.

X. Claim XXII – Certification of Petitioner

In Claim XXII, Petitioner states that he is incorporating his certification in support of his claims. Petitioner's claim does not constitute a separate federal constitutional claim. Thus, this claim is denied. The Court does note though that it has considered the entire record that was before the state courts in analyzing Petitioner's federal habeas claims.

Y.  Claim XXIII – Petitioner is entitled to, at minimum, an evidentiary hearing based on counsel's ineffectiveness

In Claim XXIII, Petitioner argues he is entitled to at least an evidentiary hearing on some claims.  More specifically, he notes counsel's failure to file meritorious motions, that jurors were not properly instructed on the elements of the crime, counsel's failure to investigate the unknown girl that established the motive for the crime, and the trial judge's conflict of interest.

Initially, this Court notes that in analyzing Petitioner's claims under AEDPA, it is improper for this Court to receive such evidence outside of the state court record.  *See Cullen*, 563 U.S. at 180-81.  Furthermore, this Court has already rejected the claims Petitioner attempts to reassert in Claim XXIII.  Therefore, Claim XXIII is denied.

Z.  Claim XXIV – PCR counsel did not comply with *State v. Webster*

In Claim XXIV, Petitioner argues that PCR counsel failed to advance all his arguments, thereby violating *State v. Webster*, 901 A.2d 338 (N.J. 2006).  In *Webster*, the New Jersey Supreme Court stated that a PCR counsel's "brief must advance the arguments that can be made in support of the petition and include defendant's remaining claims, either by listing them or incorporating them by reference so that the judge may consider them." *See id.* at 340.

This Court is denying all of Petitioner's claims on the merits and is not denying any claims based on a possible procedural default.  This Court fails to see how Claim XXIV itself therefore entitles Petitioner to federal habeas relief.  Therefore, it is denied.

AA.  Claim XXV – Ineffective assistance of trial and appellate counsel

In Claim XXV, Petitioner re-raises numerous ineffective assistance of counsel claims.  They are as follows:

1. Ineffective assistance of trial and appellate counsel for allowing the trial court to erroneously instruct the jury that they could convict Petitioner of robbery based on an attempted theft without an instruction on attempt;

2. Trial and appellate counsel should have requested a *Clawans* charge; and

3. Trial counsel failed to investigate the case adequately by not calling witnesses who would have testified to a prior assault against Sloat; failing to subpoena text messages from Sloat's cell phone, failing to file a motion to suppress Petitioner's sneakers; failing to file a motion to suppress Sloat's cell phone and failing to move to dismiss the indictment due to selective prosecution.

These ineffective assistance of counsel claims are without merit for the reasons previously discussed in this Opinion. Petitioner is not entitled to federal habeas relief on any of his arguments raised in Claim XXV. Therefore, the Claim is denied.

BB.    Claim XXVI – Trial judge should have recused himself

In Claim XXVI, Petitioner reiterates his argument that the trial judge should have recused himself for purported prior involvement when he was a prosecutor in a criminal case brought against Petitioner. This Court though has already determined that this claim does not warrant granting Petitioner federal habeas relief. Therefore, Claim XXVI is denied.

CC.    Claim XXVII – Petitioner is entitled to an evidentiary hearing

In Claim XXVII, Petitioner again argues he is entitled to an evidentiary hearing based on the following:

1. Counsel failed to file meritorious motions;

2. Counsel did not ensure jurors were properly instructed on elements of the crime;

3. Counsel failed to investigate the unknown girl that established the motive for the crime; and

4. The trial judge's conflict of interest.

These claims have already been analyzed, discussed and denied in this Opinion as they lack merit. Therefore, Claim XXVII is also similarly denied.

DD.     Claim XXVIII - Imposition of five-year period of parole supervision is illegal

In Claim XXVIII, Petitioner argues that his initial period of five years of parole supervision was in error. Petitioner explains that the State agreed with this argument. Indeed, the New Jersey Superior Court, Appellate Division in Petitioner's PCR proceedings ordered the Superior Court to enter an amended judgment imposing no more than a three-year period of parole supervision. *See Love*, 2019 WL 1111138, at *3. Thus, as Petitioner concedes, this claim is now moot such that any habeas relief on this claim is unnecessary.

EE.     Claim XXIX – Ineffective assistance of trial and appellate counsel

In Claim XXIX, Petitioner reiterates several ineffective assistance of counsel claims already analyzed and denied by this Court. They are as follows:

1. Trial counsel failed to file a motion to suppress Sloat's cellphone;

2. Trial counsel failed to file a motion to dismiss the indictment due to selective prosecution; and

3. Trial and appellate counsel failed to ensure all witnesses were confronted like the unknown girl who Sloat purportedly introduced to Petitioner for a drug deal.

These claims have already been discussed, analyzed and denied such that Claim XXIX is also denied.

FF.     Claim XXXa – State's misconduct regarding presenting false case to the jury
        violated Petitioner's right to a fair trial

In Claim XXXa, Petitioner claims that the state concocted its story regarding how Sloat introduced Petitioner to a girl for a drug deal, but that the girl did not pay Petitioner. This witness, according to Petitioner, established the motive for the crime. However, Petitioner claims the State knew this witness did not exist but fabricated this evidence.

This Court has already denied this claim on the merits. To the extent Petitioner reargues this argument in Claim XXXa, it is also denied.

GG.     Claim XXXb – Ineffective assistance of counsel

In Claim XXXb, Petitioner reiterates several claims that have already been discussed, analyzed and denied by this Court under the guise of an ineffective assistance of counsel claim; they are as follows:

1. Prosecutorial misconduct regarding not charging Shah;

2. Illegal search of vehicle;

3. Illegal search and seizure of Petitioner's sneakers;

4. Trial judge was biased based on his prior employment as a prosecutor who had previously criminally charged Petitioner;

5. Failure to receive a *Clawans* charge;

6. Problems associated with the trial judge's instruction on attempt; and

7. Third-party guilt related to the fact that the injuries to Sloat were not caused by Petitioner, but rather from a prior assault.

Point 1 in this claim was already addressed and denied in *supra* Part IV.L and need not be addressed again here.

In Point 2 within this claim, Petitioner alleges that there was an illegal search of his vehicle. During this search, the police discovered drugs. However, the drugs seized are not related to Petitioner's underlying state criminal convictions that are at issue in this case related to the robbery and assault on Sloat, nor, importantly, does Petitioner allege that the drugs seized in that search were used against him in this case. Furthermore, as noted above, the case against Petitioner related to the robbery and assault on Sloat in this case was quite strong such that any purported error would not have changed the result of this proceeding to a reasonable probability and/or any error would be considered harmless. As a final aside, it appears as if the drugs seized from Petitioner's vehicle were suppressed in his separate drug case. (*See* ECF 8-13 at 1-2).

Point 3 was essentially discussed in analyzing Petitioner's ineffective assistance of counsel claim regarding counsel's failure to seek suppression of the sneakers in *supra* Part IV.T.ix and need not be separately analyzed here.

Point 4 in this claim regarding the trial judge's purported biasness was discussed and denied in *supra* Part IV.Q and need not be analyzed again here.

Point 5 within this claim regarding ordering a *Clawans* charge was essentially discussed and denied in *supra* Part IV.T.iv and need not be analyzed again here.

In Point 6 within this claim, Petitioner argues as follows:

> [t]he State argued the trial judge instructed the jurors on the law of attempt in the aggravated assault instruction. The prosecutor expects jurors to do mental gymnastics, extracting the law of attempt from the attempted bodily injury instruction and grafting it onto the law of theft. If anything, jurors know that the law of attempted bodily injury had a specific definition that constrained their deliberations, but they were not so constrained when deciding whether there was an attempted theft.

(ECF 3 at 47). As this Court noted in *supra* Part IV.M, the trial judge in instructing the jury on attempt, related it back not only to the aggravated assault charge, but also to the attempted theft

charge on the verdict sheet. (*See* ECF 7-7 at 94-95). The jury is therefore presumed to have followed these instructions. *See Weeks v. Angelone*, 528 225, 234 (2000).

In Petitioner's final point within this claim, he argues that Sloat's injuries were not caused by Petitioner, but were from a prior assault. This Court has essentially analyzed and denied this claim in *supra* Part IV.O and need not do so again here.

Accordingly, Petitioner is not entitled to federal habeas relief on any of his arguments within Claim XXXb.

## V.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Applying this standard, this Court finds that a certificate of appealability shall not issue in this case.

## VI.   CONCLUSION

For the foregoing reasons, Petitioner's amended habeas petition is denied. A certificate of appealability shall not issue. An appropriate order will be entered.

DATED: August 29, 2023                   s/ Georgette Castner
                                         GEORGETTE CASTNER
                                         United States District Judge